MARY DOLL, an infant, by her next friend,

v.

JEREMIAH CASH.

[Submitted January 14th, 1901.  Decided January 17th, 1901.
Filed June 4th, 1901.]

Plaintiff's mother died leaving substantially no personal property, and plaintiff, an infant, as her only heir.  Decedent's husband was appointed her administrator, and obtained an order to sell the real estate for payment of her debts, among which was the undertaker's bill for her burial, for which the husband was liable.  Other bills were for provisions furnished the family, and druggist's and physician's bills, for which he was *prima facie* liable.—*Held*, that an injunction would lie, at the suit of plaintiff, to restrain the sale since, being an infant, she could not protect herself, by obtaining a loan on the property and otherwise, against a sacrifice of her property.

Heard on order to show cause, based on bill, answer and affidavits, why an injunction should not issue.

*Mr. James A. Gordon,* for the complainant.

*Mr. William A. Coddington,* for the defendant.

PITNEY, V. C.

The complainant is the infant daughter and only heir-at-law of Maggie Cash, deceased, who was the wife of the defendant, Jeremiah Cash, complainant's stepfather.

The object of the bill is to enjoin Cash from acting under an order, which he lately obtained from the orphans court of the county of Union, authorizing him to sell a house and lot of which his wife died seized, situate in Plainfield.

Doll *v.* Cash.

The complainant is four months short of twenty-one years of age. Her mother died in October, 1899. She was possessed of substantially no personal property; it amounted to only $29.15.

Nevertheless, her husband, shortly after her decease, took out letters of administration upon her estate, and applied to and obtained from the orphans court an order to sell her real estate to pay her debts. His statement showed nine creditors and a total indebtedness of $317.42. Of these nine creditors five were small bills for provisions furnished to the family, amounting to less than $40. The other four were as follows:

| | |
|---|---|
| Physician's bill | $77.00 |
| Druggist | 20.35 |
| Undertaker | 103.25 |
| Boyce, Runyon & Co. | 79.26 |

The claim of Boyce, Runyon & Company is based on a promissory note made by Cash and endorsed by his wife. In his affidavit, however, he states it was originally her debt to Boyce, Runyon & Company, and he loaned her his note to pay it. The undertaker's bill is for the burial of the deceased, and is clearly the debt of the husband; leaving to be dealt with the physician's and druggist's bill and the small bill for provisions supplied to the family; and even for these the husband is *prima facie* liable.

The complainant, by counsel, opposed the making of the order for sale in the orphans court, offering to prove that these claims were not the debts of her mother; but the orphans court felt bound by the decision in the prerogative court, in *Smith* v. *Smith, 12 C. E. Gr. 445,* to decline to undertake the determination of that question; and this court, however much it may doubt its soundness, must treat it as binding, as was done in *Baptist Church* v. *Syms, 6 Dick. Ch. Rep. 363* (at *p. 366*), and see the same case on appeal, *7 Dick. Ch. Rep. 545.*

It further appeared in the affidavit of the defendant, in opposition to the application for an injunction, that the defendant had no property or means with which to pay any of the claims above stated, except a mortgage which he claims to ·hold, as stated by counsel, as assignee, upon the house and lot in question,

for $700, and arrears of interest, which mortgage was under foreclosure and its enforcement disputed by the complainant.

The question is whether, under the above circumstances, the administrator should be permitted to proceed to sell these lands. The circumstances disclose a strong motive on his part to obtain a sale of the premises and appropriate the proceeds to the payment of debts, a portion of which are clearly his to pay, at a time when the complainant, by reason of her infancy, is unable to protect herself against the sacrifice of her property. If she were of age, she could borrow money, either on her personal security or by mortgage, sufficient to pay so much of the claims as were really the debts of her mother; but during her minority her hands are tied, and without the aid of this court she must stand by and see her property sold for whatever it may bring at a forced sale, at an expense in court fees, printer's fees and commissions of the administrator, which, in the aggregate, will probably amount to more than sufficient to pay such part of the claims presented as were really the debts of her mother. Admitting, therefore, for the argument's sake, that, upon the present showing, the weight of the evidence is that a small portion of the claims presented is valid against the decedent's estate, yet I think that the conduct of the administrator in pressing the sale at this time is so far oppressive and unwarranted as to be inequitable; in fact, one cannot but feel a doubt as to the propriety of his incurring the expense of administration at all.

I will advise an order that an injunction do issue.